## PELEG CROSS
### v.
## WEARE COMMISSION COMPANY AND WILL COUNTY NATIONAL BANK.

*Executions—Bill in Aid of—Mortgage on Leasehold Estate—Chattel Mortgage—Validity of—Mortgage of Partnership Property Executed by One Partner—Estoppel.*

1. Upon a bill filed in aid of an execution to set aside mortgages on a leasehold estate, given in the form of a chattel mortgage, although the interest of the mortgagors was real estate, this court holds that, as it clearly appeared that it was the intent of the mortgagors to mortgage their interest in the property described to the mortgagee, whatever that interest might be, that the mortgage was valid.

2. When a partner receives money raised by a mortgage given by the other partner on the supposition, known to him, that such other partner had the right to execute the mortgage, he will be estopped from asserting title to the property, and a judgment creditor, with notice of the mortgagee's equities, will stand in no better position.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. GEORGE S. HOUSE, for appellant.

In the case of Griffin v. Marine Co., 52 Ill. 130, Wright leased to one Gibbs et al., certain real estate for a fixed term, with right of renewal. On this leased ground a large and expensive grain elevator was erected, and thereafter the

property was mortgaged to secure the payment of a considerable sum of money. Default was made in the payment of the debt secured, and the mortgage was foreclosed by an exercise of the power of sale in the mortgage contained. A bill was filed to set aside the sale on the ground that the mortgagee was the purchaser at the sale. The lease had an unexpired term of more than five years.

The Supreme Court in disposing of the case, say: "In answer to this objection, it is claimed, by counsel for appellee, that the interest of the mortgagees in the lease and elevator was personal property, and being such, if the mortgagee obtained possession after condition broken, his legal title became complete, and without reference to the public sale under the power, his subsequent private sale to Carver was a valid foreclosure of the equity of redemption. The conclusive answer to this position is, that the property mortgaged was an actual interest in real estate, a chattel real at the common law, falling under the definition of 'real estate,' given in the first section of our statute of judgments and executions, and because immovable, possessing none of those attributes of personal property which have shaped the law in regard to the mortgage of such property." Conklin v. Foster, 57 Ill. 104; Dobschuetz v. Holliday, 82 Ill. 371.

In the late case of First National Bank of Joliet v. Adams, unreported, Adams leased certain real estate to one Reibling, who erected thereon a paper mill. Thereafter Reibling conveyed the real estate in the lease described in trust to secure an indebtedness to the bank. The question arose as to whether the trust deed was adequate to convey the property, the trust deed conveying the property as real estate. The Supreme Court says:

"When Adams' lease to Reibling was made on July 9, 1877, no paper mill or building had yet been constructed, but the stone foundations of an old mill were on the property with the race-way, flumes, gates and appurtenances for water power ready to be attached. The upper part of the mill was built upon these stone foundations, and the lower

part rested partly upon stone foundations and the ground, and partly on posts planted in the bed of the river; the upper part was thirty by forty feet, and had two stories; the lower part was twenty-four by ninety feet and had one story; connected with, or joined to the latter, and resting upon the ground, was a building used as a bleachroom; there was also a storehouse built upon posts standing in the ground.   The paper machines, boilers, etc., were all attached to the structure.   The mill, with its buildings and machinery, was erected and in operation on August 19, 1884, when the trust deed was executed.   Such buildings and machinery can not be regarded otherwise than as fixtures.   The structures were affixed to the land in such a manner as to be a part of the realty, and although it may have been possible for the tenant to remove them, they constituted part of the freehold until severed therefrom.   Wood's Landlord and Tenant, Sec. 527.   The mill and buildings and machinery all formed a part of the leasehold estate; with the lease they were chattels real.   Griffin v. Marine Co. of Chicago, 52 Ill. 130; Conklin v. Foster, 57 Ill. 104; Dobschuetz v. Holliday, 82 Ill. 371.   Therefore, they were the proper subject-matter of a real estate mortgage, and the trust deed created a valid mortgage lien upon them in favor of appellant as the holder of the notes secured thereby."

Mr. EGBERT PHELPS, for Will County National Bank, appellee.

Whatever may be the decision as to the Weare mortgage, that of the bank is clearly a mortgage, of both real and personal property.   Possessing, as it does, all the statutory requisites of a chattel mortgage, as to execution, acknowledgment and recording, it is a valid chattel mortgage so far as any of the property in it described is personal property. And conveying the leasehold it is also a mortgage of an interest in real estate, and good—even with a defective acknowledgment as to real estate—if properly recorded and its execution duly proven on the trial, as was done.   It was, in either case, by its record, notice to the world of the lien

intended to be given by the grantor, and, as such, binding. To maintain that a third party might, as his interests might require, relegate such an instrument to the one or the other province of real or personal estate, seems to me beyond reason or justice. Suppose a real estate mortgage, in due form, containing also personal property, was acknowledged and recorded in conformity with the statutory requirements for chattel mortgages, even though defectively acknowledged as a real estate mortgage, could it be said that such an instrument, upon proper proof of its execution, could not be admitted as evidence on foreclosure in a court of equity ?

Appellant's counsel, in support of his position, maintains that the court is bound to carry out the intention of the parties to the instrument, and that that intention must be ascertained from the exact words of the instrument itself, and, consequently, if the parties made a mistake in denominating property—specifically named—as "goods and chattels," which was not goods and chattels, but something else, the court is bound by that designation to declare the instrument void, even though, as logically follows—the court should, by so doing, ignore the intention of the parties as evinced by other portions of the instrument. It is submitted that this is not good law, and is not sustained by any of the authorities cited by counsel in his brief. The mere fact of misnaming the legal quality of the property—so long as the property itself was specifically that intended to be conveyed—could not make it what it was not, nor injure the rights of the parties, particularly when no third party was injured or deceived into giving credit by such misrepresentation. This precise point was decided in Jenney v. Jackson, 6 Ill. App. 35, where the property in a deed of trust was described as personal property, whereas it was really real estate, and the court there decided that the misnomer could not injure the rights of the parties in favor of third persons, where no one was injured or deceived by the mistake.

MR. JUSTICE LACEY. The appellant in this case filed his

bill in equity against appellees in aid of an execution, issued on a judgment in the Will County Circuit Court, dated September 2, 1890, for $7,653.33, against Druley Bros., a firm composed of Wm. M. Druley and Albert A. Druley, seeking to set aside mortgages executed to the appellee, the Weare Com. Co., by Wm. M. Druley, and by Wm. M. Druley and Albert A. Druley to appellee, the Will Co. National Bank. The mortgages executed to the Weare Com. Co. were three, bearing date June 2, 1888, June 2, 1889, and Nov. 21, 1889, covering in the aggregate a sum of over $10,000, which were duly recorded in the chattel mortgage record of said county. The other mortgage was executed to the appellee, the Will Co. National Bank, and bears date July 14, 1890, and was also duly recorded and was given to secure something over $4,000. The appellees filed, respectively, cross-bills seeking foreclosure of their respective mortgages, and asking the sale of the realty and payment in priority to the judgment lien of appellant. This is as far as we need notice any of the parties and their pleadings herein for a decision of the points raised by appellant. The three mortgages given to the appellee, the Weare Com. Co., covered certain leasehold interest in real estate at Plainfield, and described the property as the steam elevator known as the Druley Bros. Elevator, all cribs, office and scales, all personal property, and all fixtures and appurtenances and personal property in connection with said elevator, all being situate in said Plainfield on a piece of land, etc., etc., described as follows (here follows description), being a railroad elevator lot 110 feet long and 45 feet wide, together with all and singular the appurtenances thereto belonging, or in anywise appertaining. The other mortgage, to the Will Co. National Bank, given on the elevator, the same being situate on a like leasehold estate at Caton, was similar in description. The court below on a hearing found in favor of appellees on the issues made in their respective cross-bills, and ordered the property sold and the said mortgage indebtedness paid in advance of appellant's execution, which was levied on this same real estate. The appellant now brings the case to this court and questions the correctness of this decision.

It is contended on the part of appellant that the leases to the Druley Bros. above named were for a term of years, with no provision for removal of the warehouses by the tenant, and as between the parties to the lease, such leasehold interest was real estate, and that being the case, the mortgages in question being in form chattel mortgages, did not convey to appellees any interest in the property in question. The above is the main point of contention in this case, and its decision mainly settles the controversy. We have examined the mortgages carefully, and while it is apparent that the parties to it supposed that the property mortgaged was chattels, yet we are satisfied that it was clearly the intention to convey it to the Weare Com. Co., whatever it might be. The words of the granting part of the mortgages were, that Druley granted, sold, conveyed and confirmed the goods and chattels, etc., to wit, " the steam elevator, known as the Druley elevator, all the cribs, the office scales and personal property, and all other fixtures and appurtenances and personal property used in connection with said elevator, all being situate at said Plainfield, or Caton, on a piece of land, etc., described as follows, viz.," etc. (Here follows the description of the land on which the elevator was situate.) The mortgages were broad enough in their language to convey the real estate and leasehold fixtures, and they show it was clearly the intention to convey the property, of whatever character it might be. The Druleys had no right, under their leases, to sever the warehouses from the leasehold and remove them, nor did they authorize such removal by the mortgages, and if the leasehold interests were not conveyed, both parties to those deeds would be disappointed. If such leasehold interests were not conveyed nothing was conveyed, and neither the Weare Com. Co. nor the bank took any security for their money advanced. This view of the proper construction to be given to the conveyances is clearly supported by the decision in the case of Theyer v. McGee, 20 Mich. 195. It is true that the leasehold estate was not described by metes and bounds in the conveyance, but such a description is not always necessary. By a grant of a house

or other buildings the real estate on which it stands also passes. This is an old and well established principle. Trinity Church v. Boston, 118 Mass. 164; Allen v. Scott, 21 Pick. 25. An absolute conveyance of buildings can not be made and the property enjoyed without the conveyance of the land on which it stands, so the latter passes by necessary implication. Tinker v. Rockford, 137 Ill. 123. The fact that the elevators were described as situate on a certain tract of land, does not have the effect to exclude the leasehold interests from the conveyance of the buildings. Such a description was only intended to point out the location of the warehouses, for, as before said, it was the intention that the property in the elevators as they then stood, including the leasehold interests, should pass by the mortgages to the Weare Com. Co. and the Will Co. National Bank, and that being so, the description of the realty on which they stood would only serve to more clearly show what was intended to pass by the mortgages, to wit, the entire leasehold interests. Such description was not restrictive in its nature, nor does the language in the mortgages show such an intention.

The point is made against the interest of the Weare Com. Co. as to its mortgages, that Albert A. Druley did not join in the conveyance. But we think there is nothing in this point for the following reasons: Albert Druley, as we think the evidence shows, had no real interest in the realty conveyed, and besides he was a partner, and as such received the money raised by the mortgages, knowing at the time that it was being so raised on the supposition that Wm. A. Druley had a right to convey the entire interests to the warehouses. He made no objection nor did he inform the mortgagees that he had an interest in the property which was being mortgaged. He should be estopped now from asserting any title to the property. As a case in point showing a partner will be estopped under such circumstances, we cite Moran v. Palmer, 13 Mich. 367.

The appellant is in no better position than would Albert Druley be, for he, before the rendition of his judgment, had notice of all the equities of the Weare Com. Co., as we think

the court below had clearly the right to find from the evidence.

The statute of frauds can not be invoked to prevent the estoppel. For it is well settled that the title of land may be conveyed by estoppel and creditors can not set up the statute to defeat an estoppel against their debtor. Singer v. Carpenter, 125 Ill. 117; Hill v. Blackwelder, 113 Ill. 283; Robbins v. Moore, 129 Ill. 30; Wade v. Bunn, 84 Ill. 117.

Upon a review of the evidence in the case, we think the merits are entirely with the appellees, the Weare Com. Co. and the Will County National Bank, and to hold that the appellant's judgment should have precedence to the several mortgages would be doing a great injustice to the appellees. There appears to us to be no equity in the appellant's case, as well as a want of any legal principle in his favor. For these reasons the decree of the court below is affirmed.

*Decree affirmed.*